# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANITA MORENO, Plaintiff, v. MICHAEL J. ASTRUE, Commissioner of Social Security, Defendant. | Case No. CV 09-3644-JEM<br><br>MEMORANDUM OPINION AND ORDER REVERSING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR IMMEDIATE AWARD OF BENEFITS |

**PROCEEDINGS**

On May 22, 2009, Juanita Moreno ("Plaintiff" or "Claimant" or "Moreno") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") disability benefits. The Commissioner filed an Answer on August 11, 2009. On December 7, 2009, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be reversed and remanded for an immediate award of benefits.

## BACKGROUND

Plaintiff Juanita Moreno is a 63 year old female who was determined to have the medically determinable severe impairments of type II diabetes mellitus and degenerative disc disease of the lower thoracic, lumbar and cervical spine. (AR 14.) She also was determined to have the medically determinable but nonsevere mental impairment of depressive disorder. (AR 15.) Plaintiff has not engaged in substantial gainful activity since the August 25, 2006, application date. (AR 14.)

Plaintiff's claim was denied initially on May 15, 2007, and on reconsideration on August 12, 1007. (AR 12.) She filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Mary L. Everstine on December 1, 2008, in Santa Barbara, California. (AR 12.) Claimant appeared and testified. (AR 12.) Vocational expert Elizabeth Cerezo also testified. (AR 12.)

The ALJ issued an unfavorable decision on January 14, 2009. (AR 12-19.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC")[1] to perform the full range of medium work (AR 15), including her past relevant work as a caregiver and driver (AR 18), and other jobs in the national economy in the light work category, such as a companion for domestic care. (AR 18-19.) The ALJ also determined that Claimant has a limited education but is able to communicate in English. (AR 18.)

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues that Plaintiff is raising as grounds for reversal and remand are as follows:

1. Whether the ALJ properly considered the medical evidence to find that Plaintiff does not suffer from a severe mental impairment.

2. Whether the ALJ properly considered the subjective pain testimony of Plaintiff.

---

[1] Residual functional capacity is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

  
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "'more than a mere scintilla' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and citations omitted). This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the Commissioner cannot meet this burden, then the claimant is entitled to benefits.

## SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen

v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments.  Parra, 481 F.3d at 746.  Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations.  Id.  If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e). The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.  If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  Id.

In this case, the ALJ determined that the Claimant had the medically determinable severe impairments of type II diabetes mellitus and degenerative disc disease.  The ALJ, however, concluded at step four of the sequential process that Plaintiff could perform her prior work and at step five that she could perform other jobs in the national economy.

The ALJ also determined that Plaintiff had a medically determinable mental impairment of depressive disorder with anxiety but concluded at step two of the sequential process that this impairment was not severe.

## DISCUSSION

### A. The ALJ Failed To Consider Properly Plaintiff's Mental Impairment

The ALJ concluded at step two of the sequential process that Plaintiff's medically determinable mental impairment of depression disorder was not severe. Substantial evidence supports the ALJ's determination. The ALJ erred nonetheless in finding that Plaintiff's mental impairments imposed no limitations and by failing to consider Plaintiff's mental impairments in combination with her other impairments in determining her RFC and assessing what jobs she can perform.

At step two of the five step sequential inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. Bowen, 482 U.S. at 140-41. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ, however, must consider the combined effect of all the claimant's impairments on his or her ability to function, regardless of whether each alone was sufficiently severe. Id. Also, the ALJ must consider the claimant's subjective symptoms in determining severity. Id.

The step two inquiry is a de minimis screening device to dispose of groundless claims. Bowen, 482 U.S. at 153-54. An impairment or combination of impairments can be found nonsevere only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. Smolen, 80 F.3d at 1290; SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).

In this case, the ALJ determinated that Claimant suffers from the medically determinable mental impairment of depressive disorder with anxiety over her medical condition. At the request of the Social Security Administration, Dr. Jeannette Townsend, Ph.D. performed a comprehensive mental evaluation of Plaintiff on January 27, 2007. (AR 14-15, 328-31.) Claimant reported "problems with back, body pain and muscle spasms" (AR 278) and was unable to sit, stand or lie down too long. (AR 279.) She felt depressed about

her medical condition. (AR 278.) She reported two years of outpatient therapy but no psychiatric hospitalizations. (AR 278.)

Dr. Townsend diagnosed Plaintiff with depressive disorder with anxiety in reaction to medical condition. (AR 280.) According to Dr. Townsend, Plaintiff could "understand simple and detailed instructions" and "some complex instructions." (AR 281.) She was able to do "simple repetitive tasks." (AR 281.) She was assessed a GAF of 55. (AR 15, 281.) Dr. Townsend observed that Plaintiff was "interrupted by pain during the evaluation and she had to stand up several times." (AR 281.) Dr. Townsend recommended outpatient treatment for Plaintiff's depression. (AR 281.)

State agency reviewing psychiatrist Dr. McAuley diagnosed Plaintiff with affective disorder (AR 318) and depressive disorder with anxiety in reaction to medical condition. (AR 328.) He failed to mark the box that this impairment was not severe. (AR 328.) Dr. McAuley indicated mild limitations in functioning (AR 326) and moderate limitations in ability to maintain attention, perform activities within a schedule, and complete a normal weekday without interruptions from psychologically based symptoms. (AR 329-30.) He also indicated that Plaintiff is able to do "simple repetitive tasks" (AR 328) and semi-complex tasks. (AR 331.) He opined that her depression is stable with Zoloft. (AR 328.) Dr. McAuley added that most of Plaintiff's limitations are due to physical complaints. (AR 328.) He found her credible. (AR 331.)

Both sides mischaracterize the mental evaluation evidence. The ALJ found no limitations due to her depressive disorder (AR 15), which is contrary to Dr. McAuley's evaluation in which he found both mild and moderate limitations in functioning. (AR 326, 329-30.) The ALJ also said that Plaintiff testified at the hearing that medication for her depression controls her symptoms. (AR 15.) This misstates Plaintiff's testimony. When asked if medication controlled her depression, Plaintiff stated, "I can't say. I don't. I don't know." (AR 77-78.)

Likewise, Plaintiff mistakenly interprets the evidence to contain a simple repetitive tasks limitation that precludes semi-skilled work. Neither Dr. Townsend nor Dr. McAuley ever said Plaintiff was limited to simple repetitive tasks. Dr. Townsend said Plaintiff could understand simple and complex instructions. Dr. McAuley said Plaintiff could do semi-complex tasks. Neither said Plaintiff was limited to unskilled work. Substantial evidence supports the ALJ's determination that Plaintiff's medically determinable mental impairment of depression was nonsevere.

The ALJ erred nonetheless. After determining that Plaintiff's mental impairment was not severe, the ALJ decision thereafter never mentions Plaintiff's mental impairment or the limitations resulting from that impairment in determining her RFC and assessing what jobs she can perform. This is probably the result of the ALJ's factually inaccurate conclusion that Plaintiff has no limitations due to her mental impairment. (AR 15.)

The ALJ's failure to consider Plaintiff's mental impairments at steps four and five of the sequential process was legal error. Social Security regulations mandate that an ALJ must "consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity." 20 C.F.R. § 416.945(e). Social Security Ruling 96-8p also provides:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) may not significantly limit an individual's ability to do basic work activities, it may — when considered with limitations or restrictions due to other impairments — be critical to the outcome of a claim.

Thus, Plaintiff's mental impairment should have been considered in assessing Plaintiff's RFC and in determining what, if any, jobs she can perform. The Commissioner argues that the outcome here would have been the same even if limitations resulting from her mental impairment were included in her RFC. This is <u>post hoc</u> reasoning that the Court cannot

consider.  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  This contention also assumes no other error.

The ALJ erred in yet another way.  Ninth Circuit cases make clear that a claimant's impairments "must be considered in combination and must not be fragmentized in evaluating their effects."  Beecher v. Heckler, 756 F.2d 693, 694 (9th Cir. 1985) (internal quotations and citation omitted).  The ALJ must consider the combined effect of all of a claimant's impairments on his or her ability to function "without regard to whether each alone was sufficiently severe."  Smolen, 80 F.3d at 1290.

Here, Plaintiff's mental impairment was integrally related to her medical condition.  The ALJ determined on competent medical evidence that Plaintiff suffers from depressive disorder with anxiety in reaction to medical condition.  Nowhere does the ALJ decision consider Plaintiff's mental and physical impairments in combination with each other in determining Plaintiff's RFC and deciding the disability issue.

**B.      The ALJ Erred In Rejecting Plaintiff's Subjective Pain Testimony**

The ALJ found that Plaintiff has the severe medical impairments of type II diabetes mellitus and degenerative disc disease of the lower thoracic, lumbar and cervical spine.  (AR 14.)  The ALJ determined that these medical impairments reasonably could be expected to cause Plaintiff's subjective pain symptoms.  (AR 16.)  Nonetheless, the ALJ decision concluded that Claimant's symptoms are not credible to the extent they are inconsistent with the assessed RFC.  (AR 16.)  This finding is unsupported by the evidence and in legal error.

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged.  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen v. Chater, 80 F.3d at 1281-82 esp. n.2.  The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because they are unsupported by objective medical evidence.  Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345.  If the

ALJ finds the claimant's pain testimony not credible, the ALJ "must specifically make findings which support this conclusion." Bunnell, 947 F.2d at 345. The ALJ must set forth "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 949, 958 (9th Cir. 2002); see also Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947 F.2d at 345-46. Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of a claimant's symptoms only by offering "specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722. The ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

In this case, Plaintiff Juanita Moreno alleges disabling back and neck pain from her degenerative disc disease that makes it difficult for her to sit or stand more than 30-45 minutes (AR 78) or to lift, bend or carry heavy things. (AR 76, 141.) Plaintiff's daughter Maria Salazar confirmed these symptoms. (AR 16.) So did Dr. Townsend, who observed that Plaintiff was interrupted by pain during the mental evaluation and had to stand up several times. (AR 281.) The ALJ decision never mentions this important observational evidence. Also confirming Plaintiff's pain symptoms was chiropractor Ted Garcia, who indicated that Plaintiff was unable to bend and stoop, lift more than 10 pounds, or stand more than 2 hours. (AR 497; see also AR 419-96.)

As the ALJ concedes, Plaintiff's degenerative disc disease reasonably could cause her pain symptoms. On May 16, 2008, a cervical spine CT exam revealed chronic degenerative disc disease, moderately severe spinal stenosis with cord infringement and/or compression, posterior disc bulge, and bridging anterior endplate osteophytes. (AR 498-99.) A lumbar spine CT on the same date revealed severe degenerative change of the facet joints and a broad degenerative concentric-type bulge which produces mild central stenosis. (AR 500-02.) These findings by St. John's Regional Imaging Center confirm earlier radiographs in March of 2007 at Clinicas Del Camino Real that indicated mild to moderate

spondyloarthritic and degenerative disc disease in the thoracic and lumbar spine. (AR 408, 411.)

There is no evidence of malingering nor does the ALJ assert malingering. Dr. Townsend found her cooperative and an adequate historian. (AR 278.) Dr. McAuley found her credible. (AR 331.) The ALJ did not dispute the statements of Plaintiff's daughter regarding Plaintiff's pain. (AR 116.) Thus, the ALJ can reject Claimant's testimony on the severity of her pain only with "specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1284.

The ALJ decision does not meet this high standard. The ALJ advances several reasons for finding Claimant's pain symptoms "not credible." (AR 16.) None of these reasons are clear and convincing.

First, the ALJ found that Plaintiff lacks credibility because the objective medical evidence does not support her symptoms. (AR 16.) The lack of objective medical evidence, even if true, would not be dispositive as a matter of law. Bunnell, 947 F.2d at 345 ("once the claimant produces objective evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective evidence"); Rollins, 261 F.3d at 857 (subjective testimony cannot be rejected on "sole" ground that objective medical evidence is lacking). There must be other evidence to support Plaintiff's subjective symptoms. In particular, the ALJ plainly erred in his treatment of Maria Salazar's testimony. Not offering any legitimate reasons for disputing it, the ALJ decision simply "gives greater weight to the documented medical evidence of record." (AR 16.) The ALJ did exactly what case law and regulations forbid. She disregarded important lay witness testimony based solely on the medical evidence.

Even though not determinative of the severity of pain, the medical evidence is nonetheless a relevant factor in determining the severity of a claimant's pain. Rollins, 261 F.3d at 857; Smolen, 80 F.3d at 1285. Here, though, the ALJ's characterization of the medical evidence is inaccurate and unfair. The ALJ primarily relies on consulting examiner Dr. Michaelson and state agency reviewing physician Dr. Tambellini. (AR 17.) Both of these

physicians were internists, not orthopedists; Dr. Michaelson explicitly states that his report is an internal medicine assessment.  (AR 272.)   Dr. Michaelson neither conducted nor ordered radiographs or CT scans, and he did not know the extent of Plaintiff's degenerative disc disease.  Even so, he found a 50% decreased range of motion when examining for back pain.  (AR 275-76.)  The ALJ erred in favoring the testimony of Dr. Michaelson and Dr. Tambellini "based on supportability with medical signs and laboratory tests."  (AR 16.)  Both Dr. Michaelson and Dr. Tambellini completed their reports before the CT scans were done.  Nor is it clear that either saw or was aware of the chiropractic evidence.  Their assessment that Plaintiff can perform medium exertional work and lift 50 pounds occasionally and 25 pounds frequently is simply not credible.

The ALJ also unfairly discounts the chiropractor's opinion because it purportedly is based primarily on the subjective statements of the claimant.  (AR 17.)  There is no evidence to support this assertion, which is contrary to the record.  Mr. Garcia provided physical therapy for two years and was in a position to observe Claimant over a long period of time.  (AR 419-96.)  Also, the radiographs done at Clinicas Del Camino Real where Mr. Garcia works were consistent with the later CT scans.  He clearly did not rely primarily on Plaintiff's own subjective statements.

Second, the ALJ asserts that Plaintiff did not receive treatment consistent with her claims of disabling pain.  (AR 17.)  More specifically, the medical records indicated that Plaintiff received only limited and conservative treatment consisting of physical therapy and pain medication.  (See AR 17, 189, 212, 219.)  Conservative treatment has been found to suggest a lower level of pain and functional limitation than alleged by the claimant.  Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995).  The simple answer to this contention is that a definitive diagnosis of degenerative disc disease was not made until May of 2008 and no one ever took Plaintiff's pain seriously before then.  Thus, there is no basis for putting the responsibility for more aggressive treatment on Plaintiff, who has a limited education and limited financial means.  An ALJ may not draw inferences about an individual's symptoms from a failure to pursue medical treatment without first considering any explanations that a

claimant may provide. SSR 96-7p at *7; 1996 WL 374186 at *7. In this case, no effort was made to obtain an explanation. The ALJ's conservative treatment ground for rejecting Plaintiff's subjective pain symptoms is not clear and convincing.

Third, the ALJ asserts that Plaintiff's depression improved with medication. (AR 15.) This is not quite accurate, as already noted, and in any event has nothing to do with Plaintiff's pain from degenerative disc disease.

Fourth, the ALJ found that Plaintiff complained of sleep problems but "was hesitant to take pills." (AR 17.) This fact, even if true, does not mean that Plaintiff was not experiencing pain from degenerative disc disease. Plaintiff already was taking several medications. (AR 212.)

Plaintiff has the medically determinable severe impairment of degenerative disc disease. Her subjective pain symptoms are consistent with the CT scans, the chiropractic evidence, her own testimony, her daughter's testimony, and Dr. Townsend's observation of her pain during the mental evaluation. Her physical pain has resulted in a medically determinable mental impairment that imposes additional limitations. In combination, Plaintiff's degenerative disc disease, her subjective pain symptoms, which must be credited, and her mental impairments that the ALJ and vocational expert did not consider, undermine the ALJ's medium exertion RFC and render the vocational expert's testimony of no evidentiary value. It is not credible that someone with Plaintiff's physical impairments, subjective pain symptoms, and depression could or should perform the functions of a caregiver or domestic companion or could handle the responsibility that goes with those positions.

Indeed, the ALJ decision reflects uncertainty as to Plaintiff's occupational capacity and implicitly credits Plaintiff's subject pain symptoms. Initially, the ALJ assigns Plaintiff a full range medium work RFC and concludes that Plaintiff can perform her prior relevant work as a caregiver and bus driver. (AR 18.) The ALJ further concludes that, with additional exertional limitations, Plaintiff could perform her prior work as a caregiver but not as a bus driver. (AR 18.) The ALJ then says that, "if some credit is given to Claimant's testimony and

she is limited to light work," she can perform the job of domestic companion. (AR 17-18.) The problem with the ALJ's analysis, however, is that no one ever asked the vocational expert to accept Plaintiff's subjective pain symptoms or to consider her mental impairments in assessing whether she was capable of performing the caregiver and domestic companion or other jobs. The ALJ also erred in only giving "some credit" to Plaintiff's subjective symptoms and no consideration at all to her mental impairments in assessing Plaintiff's occupational capacity.

Plaintiff's subjective pain symptoms must be credited. As a result, the ALJ's determination that Plaintiff is not disabled is unsupported by substantial evidence and in legal error and must be reversed.

## DISPOSITION

The only remaining question is whether this case should be remanded for further proceedings or an immediate award of benefits. The choice of whether to reverse and remand for further proceedings or for an immediate award of benefits is within the discretion of the Court. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision and where the record should be developed more fully. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).[2]

Where the record has been developed fully and further administrative proceedings would serve no useful purpose, the case should be remanded for an immediate award of benefits. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). More specifically, a court should credit the evidence improperly rejected by the ALJ and remand for an award of benefits if: (1) the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's

---

[2] See also, generally, INS v. Orlando Ventura, 537 U.S. 12, 16 (2002), holding in an asylum proceeding that the proper course is generally remand to an agency of a matter that states place primarily in agency hands, except in "rare circumstances." In Orlando Ventura, however, the Attorney General retained ultimate discretion whereas in Social Security cases benefits are mandatory if a claimant is disabled. Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004).

evidence; (2) there are no outstanding issues to be resolved; and (3) it is clear that the ALJ would be required to find Claimant disabled if Plaintiff's evidence was credited. Id.

This case is similar to Moisa, 367 F.3d at 887. Moisa turned entirely on the credibility of the claimant's subjective pain testimony, which was improperly discounted. Taken as true, his pain testimony established his inability to work. The case required no further agency expertise and was remanded for an immediate award of benefits. Moisa held that the Commissioner, having lost his appeal, should not have another opportunity to prove that Moisa was not credible. Id.

Here too, the Court sees no purpose in remanding for further proceedings. Just as occurred in Moisa, the ALJ erred in rejecting Plaintiff's subjective pain symptom evidence which must be credited. The ALJ also erred in failing to consider Plaintiff's mental impairments in the RFC and occupational assessments. The ALJ concedes that, if Plaintiff's subjective pain symptoms were fully credited, she would be disabled. (AR 17.)

Additionally, the vocational expert never considered Plaintiff's subjective pain symptoms or mental impairments. As a result, the vocational testimony is of no evidentiary value. The vocational expert's occupational assessments at steps four and five of the sequential process are unsupported by substantial evidence and in legal error. Thus, the ALJ did not meet the Commissioner's burden at step five to prove that Claimant is able to work. The Claimant is disabled. Lounsburry, 468 F.3d at 1114.

There are no outstanding issues. Therefore, the case will be reversed and remanded for an immediate award of benefits.

**ORDER**

IT IS HEREBY ORDERED that the Decision of the Commissioner of Social Security is reversed and remanded for immediate award of benefits.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 11, 2010

*/s/ John E. McDermott*
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE